MUSCATINE COUNTY (UNITED STATES v.). See Case No. 16.538.

MUSE (COATES v.). See Cases Nos. 2,916–2,918.

MUSGROVE (INGERSOLL v.). See Case No. 7,040.

## Case No. 9,972.

MUSSELWHITE et al. v. RECEIVERS.

[4 Hughes, 166.]

Circuit Court, E. D. Virginia. 1882.

RAILROAD COMPANIES—NEGLIGENCE—EMISSION OF SPARKS FROM LOCOMOTIVE.

[1. The mere fact that a spark from a locomotive enters the window of a building and sets it on fire does not render the railroad company liable for the damage; but plaintiffs must prove that the company was negligent in the use of its engine.]

[2. The company is liable only in case it fails, in using its engines, to use the diligence which good specialists in this department are accustomed to exercise.]

This is a petition in the suit of Skiddy, Barlow & Duncan, Trustees, v. The Atlantic, Mississippi & Ohio Railroad Company, claiming the payment of about $1524, for alleged damages to the petitioners from fire, alleged to have been caused by live sparks emitted from one of the locomotive engines of the receivers, drawing a freight train, in passing near a shop building in the town of Abingdon, owned by [J. M.] Musselwhite, which, with its contents, some of which belonged to the other petitioners, were burnt and destroyed on the afternoon of the 7th November, 1879. The shop was distant some forty yards from the railroad track on the north, and fronted south to the railroad. The fire began in the upper story of the shop, inside, in the end of that story next the railroad near two windows, both of which were closed at the time; but a pane of glass in one of the windows was broken, and a third to a half of it had fallen out of place. The fire occurred about five minutes after the train passed, and about half an hour after two workmen who had been upstairs in the shop had left the building. There was no fire burning in the stove in the building at the time, and had not been that day. No one was in the building when the fire began, and it was locked. When the building was broken into and the fire seen by the first person who reached the upper story, the fire was burning on the floor in the southeast end of the building near the window with the broken pane, and was running up the legs of the benches and up standing pieces of lumber, and blazing in lumber overhead on the ceiling joists. There was an engine house one story high adjoining the building on the east side, which was consumed by the fire. The wind was from

the direction of the railroad towards the buildings; but was light, it being a matter of doubt with many, what its direction was. The afternoon was very dark and cloudy; the atmosphere damp and heavy; the clouds low and thick. Witnesses testify to seeing dense smoke issuing from the engine; some of them testify to seeing sparks in the clouds of smoke; others say nothing of sparks, though they testify to the smoke. One witness testifies to seeing these sparks from a distance of three hundred yards off: but claims that he is exceptionally far-sighted. Another witness, who was the driver of a team of horses which was standing not far from the shop and about thirty yards from the railroad, testifies, that the sparks were so large or fervid that they burnt the hair of ("swinged") his horses.

One witness says the alarm of fire was within four or five minutes after the passage of the freight trains; another says it was five minutes. Witnesses who were at a distance say the alarm of fire reached them within ten minutes after the trains went by. Testimony is given estimating the damages by loss of the buildings at $505; by destruction of lumber in the building, engine and implements at $734; and by destruction of tools, $102, in all $1511.

On the part of the defense, a paper is filed by which counsel for petitioners "admits that the receivers can prove that they used the most improved appliances to prevent the escape of sparks from their locomotives at the time of the fire, which is the subject of the investigation in this cause." Such is the substance of the evidence.

HUGHES, District Judge. I have little to remark on the evidence. I must express a doubt whether the statement of McCannahan is not an afterthought, not only as to the sparks themselves, but as to the "swingeing" they are alleged to have inflicted on his horses; and it is also rather difficult to think that Midkiff does not exaggerate a little when he testifies to seeing sparks three hundred yards off which Henry Johnson could not see as near as ten yards; although he claims to be exceptionally far-sighted. A doubt occurs, also, whether the shower of sparks not seen at all by some witnesses, but seen so vividly by others to fall upon the buildings, should have ignited nothing in or near it on the outside; but should have confined their operations to what could be effected inside, by entering a very small aperture through a part of the space of a pane of glass, the only open space in that part of the building.

A doubt also arises whether a fire communicated by a single spark could in five minutes have produced the cloud of smoke that was seen pouring out of the eaves of the building, of which there was an alarm over the town in ten minutes. I think the evidence is inconclusive. It is only circumstantial; and the soundest test of the validity of that sort of evidence is, that no other theory but the hypothesis on which the conclusion is based, can be formed. Are there not many ways of accounting for a fire in a carpenter's shop attached to an engine house, full of combustible material, with a stove in it, frequented by workmen who smoke pipes or cigars and carry matches, than by supposing it was burnt by a spark from an engine forty yards off that could not have entered the building at all except through a single aperture in the window of the upper story? I do not think the evidence taken and submitted by petitioners (the defendants not appearing and waiving cross-examination) is conclusive of the fact that the shop and contents were burned by fire from a spark getting in at that broken pane of that shop window.

But I do not base my ruling in this case on the inconclusive character of the evidence. The law applicable to all such cases must govern in the decision of this. The petitioners would not be entitled to damages from the mere fact, if it were a fact, that a spark from the defendant's engine, by entering the building, caused the fire which consumed it. It is necessary to their case that the defendants should have been guilty of negligence in the use of their engine, and for the petitioners to prove that they were. The law as to railroads is, that when a railroad company is chartered with a right to propel its trains by steam engines, then the company is liable only in case, in using its engines, it fails in the diligence which "good specialists" in this department are accustomed to exercise. As to "good specialists," see Whart. Neg. §§ 635 and 872, and cases there cited. The emission of sparks from the engine is not negligence; unless the sparks were negligently emitted. See Vaughan v. Railroad, 3 Hurl. & N. 685; Whart. Neg. § 869.

The authorities on this point are so numerous that it would be a useless burden to cite them. The trains in this case were running lawfully over the company's property; they were running under powers granted by the legislature to the company. Running thus, they are not responsible for fires arising from sparks proceeding from their own engines, unless it is proved that the emission of the sparks was due to negligence on the part of the defendants, either in using engines improperly equipped and furnished; or in using properly furnished engines in some negligent manner. Such negligence is not even charged in the petition. Though the burden is on the petitioners to prove it, no evidence is offered on that point. Being neither charged nor proved, there is no case made or shown for damages. The petition must be dismissed with costs.