WORLD'S COLUMBIAN EXPOSITION CO. v. REPUBLIC OF FRANCE.

(Circuit Court of Appeals, Seventh Circuit. December 2, 1898.)

No. 488.

1. APPEAL—QUESTIONS ARISING UPON THE RECORD—ASSIGNMENTS OF ERROR.
    An assignment of error in the circuit court of appeals that the trial court erred in rendering judgment for the plaintiff presents the question of the sufficiency of the allegations of fact in the declaration, aided by all lawful intendment after verdict, to show a cause of action.

2. PLEADING—DECLARATION IN CASE—AVERMENT OF FACTS.
    In a declaration in an action on the case the state of facts upon which the legal obligation or duty alleged to have been violated arose must be shown, at least in general terms, or it will be bad even after verdict.

3. SAME—AIDER BY VERDICT.
    The rule of intendment after verdict is in brief that if evidence and testimony to prove averments of fact in the declaration must necessarily have developed a cause of action the declaration will be held good after verdict, or a general finding by the court made the equivalent of a verdict by statute.

4. NEGLIGENCE—FAILURE TO PROVIDE MEANS TO EXTINGUISH FIRES.
    Whether the owner of a building is guilty of negligence in failing to provide means to extinguish fires which will render him liable for an injury to property of another therein by fire which originated without his fault or negligence depends upon the character of the building and its contents and the purpose for which they are used.

5. BAILMENT—WORLD'S FAIR—LIABILITY FOR INJURY TO EXHIBITS.

The facts that on the invitation of defendant, the World's Columbian Exposition Company, the complainant, without pay or recompense, sent a valuable exhibit of articles of manufacture to the World's Fair, and that defendant charged and collected admission fees to the fair and made large gains by reason of such exhibit, do not render defendant in effect an insurer of the exhibit, either by contract or by any legal obligation, nor is a cause of action for its injury by fire, while in one of the fair buildings two months after the fair closed, stated by a declaration which recites such facts and in effect places the right to recover solely on the ground that defendant failed to provide and maintain appliances for putting out fires in such building, no allegations being made as to the construction, surroundings, occupancy, or contents of the building at the time of the fire, nor of other facts 'than those above recited tending to raise a duty on defendant to maintain such fire protection.

In Error to the Circuit Court of the United States for the Northern District of Illinois.

This was an action by the republic of France against the World's Columbian Exposition Company to recover for alleged injuries to certain property by fire and water while in defendant's building. There was a judgment for plaintiff (83 Fed. 109), and defendant brings error.

The defendant (plaintiff in error in this court) was summoned to answer a plea of trespass on the case. The declaration as originally filed, barring the venue and the title of the cause and court, was as follows:

"The French republic, a foreign nation, by William Burry, its attorney, complains of the World's Columbian Exposition Company, a corporation organized and existing under and by virtue of the laws of the state of Illinois, and having its principal place of business in the city of Chicago, in said Northern district, defendant, of a plea of trespass on the case.

"For that whereas the defendant on, etc., in, to wit, the said Northern district, was then and there incorporated for the purpose of holding and was engaged in preparing to hold an exposition of, among other things, all kinds of manufactured articles, and thereafter, to wit, during the year 1893, did hold and conduct such an exposition, and, to aid in holding said exposition, did invite all persons, corporations, and foreign nations to come to said city of Chicago, and there exhibit their goods, manufactures, and other articles in the buildings and under the control and care of defendant, which invitation was accepted by many people and nations; and upon the inauguration of said exposition and during the continuance of said exposition, which was during the summer of A. D. 1893, said defendant did charge and collect an admission fee from all visitors to said exposition, and did make divers and large profits from said admission fees; and being so engaged and for the purpose of obtaining said moneys by way of admission fee and otherwise, said defendant did invite, among others, said plaintiff to bring to said exposition and there exhibit its goods and manufactures, and plaintiff did thereupon, at defendant's request, transport into the inclosure of said defendant company in Chicago aforesaid divers and various articles of manufacture belonging to plaintiff, of great value, to wit, of the value of one hundred thousand dollars ($100,000), and being tapestries, china wares, and other goods; and said goods were thereupon, for the profit and benefit of said defendant, placed upon exhibition, and were of great value to said defendant in drawing many visitors to said exposition, from whom said defendant gained and collected large amounts as admission fees,—all of which was done by plaintiff without pay or recompense to it from said defendant or any other person. And thereupon it became and was the duty of said defendant to care for, protect, and safely keep all of said goods of plaintiff so by it placed within the inclosure and under the care of said defendant, and particularly to save the same from all loss or damage from fire or water. Yet the defendant, notwithstanding the premises, did not protect said goods of plaintiff from damage by fire and water, but carelessly and reck-

lessly neglected to take proper care of or precautions in regard to said goods, and in consequence thereof, and without fault or neglect on the part of plaintiff, said goods were, on, to wit, the 8th day of January, 1894, damaged, broken, destroyed, and consumed by fire, and said goods were thereby rendered utterly and wholly useless and worthless, to the damage of plaintiff in the sum of one hundred thousand dollars ($100,000).

"Second count: And for that whereas also defendant on, etc., in, to wit, said Northern district, was then and there incorporated for the purpose of holding an exposition of, among other things, all kinds of manufactured articles, and thereafter, to wit, during the year 1893, did hold and conduct such an exposition, and, to aid in holding said exposition, did invite all persons, corporations, and foreign nations to come to said city of Chicago, and there exhibit, for the benefit of said defendant, their goods, manufactures, and other articles in the inclosure and buildings of defendant, and under its control and care, and did specially promise and undertake to use, observe, and take all reasonable and proper precautions for the protection of said property against loss or damage occasioned by fire, which invitation was accepted by many people and nations; and upon the inauguration and during the continuance of said exposition, which was during the summer of A. D. 1893, said defendant did charge and collect admission fees from all visitors to said exposition, and did make divers and large profits from said admission fees and from exhibiting the aforesaid goods, manufactures, and other articles; and being so engaged, and for the purpose of obtaining said moneys by way of admission fees and otherwise, said defendant did invite, among others, said plaintiff to bring to said exposition and there exhibit its goods and manufactures; and plaintiff did thereupon, at defendant's said request, transport into the inclosure and buildings of said defendant, in Chicago aforesaid, divers and various articles of manufacture belonging to plaintiff, of great value, to wit, of the value of one hundred thousand dollars, and being tapestries, china wares, and other goods; and thereupon said defendant did take charge of said goods and designate places where they should be exhibited, and did take the right upon itself to regulate the care and moving of said exhibits, and prescribed rules and regulations for the removing of said exhibits when said exposition should be completed, and did direct that said goods of plaintiff should only be removed from said buildings and inclosure under the rules of said defendant, and in vehicles of transportation obtained through it or its officers; and said goods were thereupon, for the profit and benefit of said defendant, placed upon exhibition, and were of great value to said defendant in drawing many visitors to said exposition from whom said defendant gained and collected large amounts as admission fees, etc.; and said exhibition of said plaintiff's goods was by it done without recompense or reward to said plaintiff moving from said defendant or any other person. And thereupon it became and was the duty of said defendant to care for, protect, and safely keep all of said goods of plaintiff so by it placed within the inclosure and buildings and under the care of said defendant, and particularly to save the same from all loss or damage from fire or water. Yet the defendant, notwithstanding the premises, and in violation of its undertakings, did not protect said goods of plaintiff from damage by fire or water, but carelessly and recklessly neglected to take proper care of or precautions in regard to said goods, and upon the expiration of said exposition did not furnish said plaintiff with proper means or vehicles for removing said goods from the buildings of defendant, and obstructed plaintiff in removing its said goods, and immediately upon the close of said exposition, and before any reasonable or proper time was given for the removal of said goods, did withdraw almost entirely all police protection from said buildings and goods, and did also withdraw, abolish, and discontinue almost the entire fire department maintained by said defendant in connection with said exposition, and left said police and fire protection wholly inadequate, and did particularly withdraw from one of said defendant's buildings, to wit, the building known as the 'Building for Arts and Manufactures,' all appliances for putting out fire therein, and disconnected all water mains therefrom, and took away standpipes erected for the purpose of putting out fire, and left said building wholly and completely at the mercy of any fire that might occur therein through

accident or design; and in consequence thereof, and without fault or negligence on the part of plaintiff, said plaintiff's goods in said building were, on, to wit, the ·8th day of January, 1894, consumed, broken, damaged, and destroyed by fire and water, and said goods were thereby rendered utterly and wholly useless and worthless, to the damage of plaintiff in the sum of one hundred thousand dollars.

"Third count: And for that whereas also defendant on, etc., in, to wit, said Northern district, was then and there incorporated for the purpose of holding an exhibition of, among other things, all kinds of manufactured articles, and thereafter, to wit, during the year 1893, did hold and conduct such an exposition and to aid in holding said exposition did invite all persons, corporations, and foreign nations to come to said city of Chicago, and there exhibit their goods, wares, manufactures, and other articles in the inclosure and buildings of defendant, and under its control and care, and did especially promise and undertake to use, observe, and take all reasonable and proper precautions for protection of said property against loss or damage, which invitation was accepted by many people and nations; and upon the inauguration and during the continuance of said exposition, which was during the year A. D. 1893, said defendant did charge and collect admission fees from all visitors to said exposition, and did make divers and large profits from said admission fee and from exhibiting the aforesaid goods, manufactures, and other articles; and being so engaged, and for the purpose of obtaining said moneys and profits by way of admission fees and otherwise, said defendant did invite, among others, said plaintiff to bring to said exposition and exhibit its goods and manufactures; and plaintiff did thereupon, at defendant's said request, transport into the inclosure and buildings of said defendant in Chicago aforesaid divers and various articles of manufacture belonging to plaintiff of great value, to wit, of the value of one hundred thousand dollars, and being tapestries, china wares, and other goods; and thereupon said defendant did take charge of said goods and designated places where they should be exhibited, and did take the right upon itself to regulate the care and moving of said exhibits, and prescribed rules and regulations for the removal of said exhibits when said exposition should be completed, and did direct said goods of plaintiff should only be removed from said buildings and inclosure under the rules of said defendant, and in vehicles of transportation obtained through it or its officers, and that said goods should only be moved from one place to another in said buildings by permission of said defendant; and said goods were thereupon, for the profit and benefit of said defendant, placed upon exhibition, and were of great value to said defendant in drawing many visitors to said exhibition from whom said defendant gained and collected admission fees, etc.; and said exhibition of said plaintiff's goods was made without recompense or reward to said plaintiff moving from said defendant or any other person. And thereupon it became and was the duty of said defendant to care for, protect, and safely keep all of said goods of plaintiff so by it placed within the inclosure and buildings and under the care of said defendant, and particularly to save the same from all loss or damage from fire or water. Yet the defendant, notwithstanding the premises, and in violation of its undertakings, did not protect said goods of plaintiff from damage by fire and water, but carelessly, negligently, and recklessly neglected to take proper care of said goods, and upon the expiration of said exposition did not furnish plaintiff with proper means or vehicles for removing said goods from the buildings of defendant, and obstructed plaintiff in removing its said goods, and immediately upon the close of said exposition, and before any reasonable or proper time was given for the removal of said goods, did withdraw almost entirely all police protection from said buildings and goods, and did also withdraw, abolish, and discontinue almost the entire fire department maintained by said defendant in connection with said exposition, and left said police and fire protection wholly inadequate, and did particularly withdraw from one of said defendant's buildings, to wit, the building known as the 'Building for Arts and Manufactures,' all appliances for putting out fire therein, and disconnected all water mains therefrom, and took away standpipes erected for the purpose of putting out fire, and left said building wholly and completely at the mercy of any fire that might occur therein through accident or design, and

took away from plaintiff certain railroad cars which it had obtained in which to ship its said goods and manufactures; and said fault and negligence of defendant caused a fire in said building on, to wit, the 8th day of January, 1894, and said defendant, by force and through its police and guards, prevented plaintiff moving its goods beyond the reach of said fire to a place of safety, and compelled plaintiff to leave said goods where they would be exposed to danger from fire: and in consequence thereof, and without fault or negligence on the part of plaintiff, said plaintiff's goods in said building were, on, to wit, the said 8th day of January, 1894, consumed, broken, damaged, and destroyed by fire and water, and said goods were thereby rendered utterly and wholly useless and worthless, to the damage of plaintiff in the sum of one hundred thousand dollars.

"Wherefore the plaintiff says that it is injured and has sustained damage to the amount of one hundred thousand dollars, and therefore it brings this suit," etc.

This declaration was afterwards amended as shown by the following entry of record:

"Now comes said plaintiff, and by leave of court for that purpose first had and obtained, and amends each count of its said declaration by inserting after the words 'and said goods were thereby rendered utterly useless and worthless,' where the same occur near the end of each of said counts, the following words: 'And plaintiff was compelled to and did pay out a large sum of money, to wit, the sum of fifteen thousand dollars ($15,000), in unpacking, caring for, drying, repacking, and obtaining boxes for those of said goods which were not wholly destroyed.'"

The plea was not guilty in the manner and form as charged in the declaration. The cause was by written stipulation submitted to the court for trial without a jury. The hearing resulted in a finding by the presiding judge that defendant was guilty, and in an assessment of $57,760, as plaintiff's damages. A motion for a new trial was made and overruled, a final judgment for the $57,760, together with costs, was entered, and defendant, now plaintiff in error, brought the record to this court for review. The transcript shows a bill of exceptions said to contain all the evidence. Following are the assignments of error:

"First. The court erred in rendering and entering judgment on behalf of the plaintiff, against the defendant.

"Second. The judgment is contrary to the law and the evidence.

"Third. The court erred in refusing the following proposition of law requested by the defendant: 'The court also finds that under the evidence the defendant was not chargeable with the duty of procuring transportation for the reshipment of the plaintiff's exhibits, but, on the contrary, that such transportation was a matter of contract between the plaintiff and the several transportation companies, over which the defendant had no possible control.'

"Fourth. The court erred in refusing the following proposition of law requested by the defendant: 'The court holds as a conclusion of law that the plaintiff's exhibits remained in the Manufactures Building on and after January 1, 1894, solely and exclusively for the convenience and benefit of the plaintiff, without benefit either direct or indirect to the defendant; that whatever care the defendant assumed to exercise over said exhibits was entirely and wholly gratuitous, and that the defendant cannot be held liable for the damages charged, except gross negligence on the part of the defendant be proven, and, there being no evidence in the record showing or tending to show gross negligence upon the part of the defendant, the plaintiff cannot recover.'

"Fifth. The court erred in refusing each and all of the findings of fact requested by the defendant.

"Wherefore the defendant prays that the said judgment may be reversed, and in all things set aside."

Arthur J. Eddy, for plaintiff in error.

William Burry, for defendant in error.

Before HARLAN, Circuit Justice, and WOODS and SHOWALTER, Circuit Judges.

SHOWALTER, Circuit Judge (after stating the facts). It is argued on behalf of defendant in error that the assignments do not raise any question which can be considered by this court; that the fifth assignment, for instance, is ill because as matter of law the presiding judge was not bound to make any special finding of fact at all, but only the general finding of guilty or not guilty in manner and form as charged in the declaration; that neither the proposition in the fourth assignment nor that in the third could have been either held or refused without a finding of fact which the trial judge was not obliged to make one way or the other; and that the second assignment—as also the first—was ill in not specializing any particular error. It is fundamental that a judgment cannot stand unless the facts of record,—apart from any showing by bill of exceptions,—aided as far as may be by the verdict, will support it. This rule holds equally where no point of the kind was made before the trial judge, either by demurrer or motion in arrest of judgment. Slacum v. Pomeroy, 6 Cranch, 224; United States Bank v. Smith, 11 Wheat. 172; Funk v. Piper, 50 Ill. App. 163; Pennsylvania Co. v. Congdon, 134 Ind. 226, 33 N. E. 795. In entering the judgment the trial judge necessarily rules or assumes that the record itself—not matters to be presented by bill of exceptions—contains the showing of fact on which such judgment may be lawfully predicated. If the record be insufficient, then, in strictness, the error occurs in entering the judgment. Where there was neither a demurrer nor motion in arrest there may have been no error of any kind up to the entry of the judgment. In the case at bar, besides the placita, the summons, and the return, the record consisted of the declaration, the plea of not guilty, the general finding against the defendant, and the judgment for $57,760 and costs. Plaintiff in error now says in its first assignment that the court erred in entering this judgment. What meaning can this statement, as applied to this record, have other than that the averments of fact in the declaration, aided by all lawful intendment after verdict, do not show a cause of action? An assignment of error (section 997, Rev. St. U. S.) is not jurisdictional in the supreme court of the United States or in the federal courts of appeal; hence the statement in the rules to the effect that the court may reverse for an obvious error, even though not assigned. The power of these tribunals to affirm or reverse or modify does not depend upon the presence or absence of any specific assignment of error. Mussina v. Cavazos, 6 Wall. 359. This, of course, does not mean that a court of error can review any matter not excepted to where such matter has no footing in the case other than by bill of exceptions. But matter of record (apart from the bill of exceptions) to which, as is often said, the exception saves itself, is open to the court of review. In the absence of any assignment calling attention to the point this court is not bound to affirm a judgment which the facts of record, aided by legal intendment, after verdict, fail to support. But here, following the declaration, there is merely the formal general issue, the formal finding of guilty with the assessment of $57,760 as damages, and the formal judgment for that sum and costs, which judgment it is declared in the first assignment the court erred in entering. Moreover, this assignment is recited in the brief for plaintiff in

error as one of the grounds on which a reversal is demanded, and counsel for defendant in error has argued against it as not being sufficiently specific. So far as concerns this record and this court, if the declaration be not good after verdict, then, and then only, did the trial court err in entering the judgment. The proposition that the declaration is not good after verdict is not less obviously and distinctly indicated than if the assignment had been in terms that the declaration shows no cause of action. The opinion of the federal court of appeals in the Second circuit in Flagler v. Kidd, 45 U. S. App. 461, 24 C. C. A. 123, and 78 Fed. 341, contains this statement:

"The assignments of error are defective because they merely state that the judgment should have been for the defendant instead of the plaintiffs, and that neither the complaint nor the findings state any good cause of action. They fail to point out any 'particular error asserted and intended to be urged,' as is required by the rule."

What the form of the assignments was,—whether one assignment was that the complaint did not show a cause of action, and another that the findings of fact did not show a cause of action,—does not appear from the report of the case. But the court reviewed the record (there being no bill of exceptions), and reversed the judgment on the ground that the findings of fact by the trial judge—shown by the record like a special verdict—were insufficient to make a cause of action. If in the case at bar the final judgment had been entered on a general demurrer to the declaration, this court would unquestionably have considered the sufficiency of the declaration upon an assignment that the overruling the demurrer, or the entry of judgment thereon for plaintiff, was error. There would have been no more reason for specifying any particular defect in the declaration in the court of review than in the court of original jurisdiction. Where there was neither a demurrer nor motion in arrest in the trial court, the assignment that the declaration does not show a cause of action, or any form of words which calls to the attention of the court the proposition that the facts of record upon which the judgment is necessarily predicated are insufficient to support it, has been held good. Funk v. Piper, 50 Ill. App. 163; McGregor v. Hubbs, 125 Ind. 487, 25 N. E. 591; Pennsylvania Co. v. Congdon, 134 Ind. 226, 33 N. E. 795. The statement that the court erred in entering the judgment plainly means that the record is insufficient in law to warrant such judgment. Obviously no question can arise on the plea or finding. There is nothing to be considered other than the declaration. We find difficulty in holding that the assignment is insufficient. But even if it were, the court in this case would hardly be justified in refusing to examine the grounds of record upon which this judgment rests.

Negligence in originating a fire, or in causing or permitting it to be started, is one thing; negligence in failing to provide and have at hand means and appliances for extinguishing an accidental fire, for the origin of which responsibility could not attach, is another. Bevan on Negligence (volume 1, p. 595) contains the following:

"A question has been raised whether, in the event of a fire happening without negligence, the person responsible for the premises can be rendered liable, because, in the opinion of a jury, he did not keep on hand at all times proper appliances to put out a fire in case one should accidentally arise.' There

seems to exist a difference of obligation in respect to the different character of buildings involved. Care must in all cases be proportioned to risk. Since, then, the breaking out of fire in dwelling houses and buildings used for domestic purposes is of uncommon occurrence, the provision of appliances to put out fire is not necessary. In the use of fire for manufacturing purposes there is a difference; the risk is greater, and constant care is in some cases required to prevent its escape. Accordingly, where fires are liable to originate in engine and boiler rooms, and the construction of the building is such that the surroundings are inflammable, an obligation arises not only to use care in tending the furnaces that are requisite for carrying on the work, but appliances for extinguishing fire, if it should break bounds, should be at hand; for this is a precaution which every ordinarily prudent man would adopt for the preservation of his own property, and the neglect of it is negligence."

McNally v. Colwell, 91 Mich. 527, 52 N. W. 70, specially referred to by Bevan, is also reported in 30 Am. St. Rep., commencing at page 494; and following the decision in this latter report is a note wherein the legal obligations and the law of negligence touching fires are discussed with an array of citations on the subject. One upon whom no duty whatever, to provide appliances for extinguishing a fire once started, is cast, may still be liable for negligence whereby said fire originated; on the other hand, one who under the circumstances was bound to provide, and had, in fact, provided, reasonable means and appliances for extinguishing fires, and to whom no negligence in the performance of that particular duty can be imputed, may still be liable for negligence in starting and originating a particular fire which, notwithstanding his reasonable means for extinguishing fires, destroyed or damaged the property of the plaintiff. In framing a declaration in an action on the case, the state of facts upon which the legal obligation or duty alleged to have been violated arose must be shown, at least in general terms. It must appear affirmatively that such duty or obligation arose on the defendant, that he neglected the same, and that an injury or damage resulted to plaintiff. If it be the purpose of the pleader to charge a breach of duty in failing to provide means and appliances for extinguishing fires, then he must disclose facts upon which such duty could be predicated. He must at least aver, along with facts or circumstances giving color to the averment, that the danger or peril from fire was so far constant and imminent that appliances and means kept constantly at hand to extinguish fires were reasonably needful. Otherwise there could be no legal duty or obligation on defendant to provide and maintain such appliances, and hence no dereliction in failing to have them at hand. 2 Chit. Pl. (16th Am. Ed.) 574, contains, as applicable to a declaration in tort for negligence, this statement:

"The declaration must show facts on which a duty is founded, which it is incumbent on the defendant to perform."

Said Judge Gary in Funk v. Piper, supra:

"Elementary principles are constantly disregarded in declaring in actions for negligence. Many cases come before us in which the declarations allege simply that it was the duty of the defendant to do the thing described, or that the defendant was negligent in not doing it, in either case without averment or recital of facts or circumstances from which the law will imply, and, therefore, the court determine, that such duty existed. In some cases a duty is implied from the mere profession or employment of the defendant, as a physician or an innkeeper; in others, from the relation of things to each other,

as a railway crossing a public highway; but in all cases the declaration for negligence must show such facts as by law make it a duty to do the thing neglected, or it will be bad after verdict."

Rulings to the same effect are found in Collis v. Selden, L. R. 3 C. P. 495, and in Gautret v. Egerton, 36 Law J. C. P. 191; L. R. 2 C. P. 371. In each of these English cases a judgment on demurrer to the declaration was the matter under review. In Funk v. Piper judgment for plaintiff after verdict in his favor was reversed because the declaration did not show a cause of action. In the case at bar there was a general finding by the court, which under the statute has the effect of a general verdict by a jury. The rule of intendment after verdict, in support of which ample citations will be found later in this opinion, is, in brief, that if evidence and testimony to prove averments of fact in the declaration must necessarily have developed a cause of action, then such declaration will be held good. It may be here added, in view of what follows in this opinion, that by statute in Illinois judgment for plaintiff on a general verdict cannot be arrested, or reversed on error, on the ground merely that one count is fatally defective, if there be another which is good. The common-law rule that after a general verdict a misjoinder of counts will be fatal in arrest or on error, is also apparently so far changed in Illinois that case and trespass may be joined. The statement in the first count, "And thereupon it became and was the duty of said defendant to care for, protect, and safely keep all of said goods of plaintiff so by it placed within the inclosure and under the care of said defendant, and particularly to save the same from all loss or damage from fire or water," being merely the legal conclusion of the pleader from matters of fact previously stated, is unsound. The same formula, with the addition of the words "and buildings" after "inclosure," is repeated in each of the other counts. Defendant did not become, in effect, an insurer either by contract or by any legal obligation resulting from matters of fact stated in any one of the counts.

It is said in the first count that defendant "neglected to take proper care of or precautions in regard to said goods, and in consequence thereof * * * said goods were, on, to wit, the 8th day of January, 1894, damaged, broken, destroyed, and consumed by fire." It is not shown that defendant was guilty of any specific default or breach of duty to which the origin of the fire was attributable; nor that owing to the structure, contents, or surroundings of defendant's premises, or to any inherent inflammable quality in plaintiff's goods of which defendant had notice, means and appliances to extinguish or prevent the spread of accidental fires were reasonably needful; nor that defendant failed to provide and maintain such reasonable means and appliances and to employ servants to use them. It is averred in this count, we may here add, that the "continuance of said exposition was during the summer of A. D. 1893," and that the plaintiff's goods were on defendant's premises for exhibition while the exposition was in progress, but not that said goods were on defendant's premises when, in January, 1894, they were injured by fire, or that the fire which injured the goods occurred on said premises. The averment that said defendant "neglected to take proper care of, or precautions in regard to, said goods,"

amounts to nothing unless matter of fact be also shown whereby the duty of doing some act or of following some course of conduct which concerned the safety and preservation of said goods devolved on defendant, and this in connection with a further showing that defendant failed in such duty and that the loss resulted from such failure. The agent causing the damage here, it is said, was fire. If, for instance, defendant, being charged with the care of the goods, failed to use reasonable efforts to remove them from dangerous proximity to a fire for the origin or continuance of which responsibility did not attach, then defendant might be chargeable. But it does not appear here that defendant was able to remove, or had at hand the means of removing, said goods, or that the goods were, in the emergency, accessible for removal, or that defendant did not use all means in its power to save the goods, and did not, in fact, save such of said goods as were only damaged but not destroyed.

The second count shows that by the invitation of the defendant the plaintiff entered one of the buildings on defendant's grounds and placed its goods therein in order to exhibit the same to visitors licensed by the defendant to enter said grounds on payment of an admission fee; that after the exposition had closed, and while plaintiff's goods were still in said building, the same being then used, so far as appears, merely as a place of storage, a fire occurred and the goods were damaged or destroyed by fire and water. There is no statement in the count showing the character of the building or any circumstances of fact which would have rendered it reasonably prudent in the defendant to provide and keep on hand, after it had ceased to use its premises for exhibition purposes, means and appliances for extinguishing fires. The count contains the statement that after the close of the exposition, and while the goods of the plaintiff were stored on defendant's premises, the defendant left the "fire protection wholly inadequate, and did particularly withdraw from one of said defendant's buildings, to wit, the building known as the 'Building for Arts and Manufactures,' all appliances for putting out fires therein, and disconnected all water mains therefrom, and took away standpipes erected for the purpose of putting out fires, and left said building wholly and completely at the mercy of any fire that might occur therein through accident or design; and in consequence thereof, and without failure or negligence on the part of plaintiff, said plaintiff's goods in said building were, on, to wit, the 8th day of January, 1894, consumed, broken, damaged, and destroyed by fire and water." We must understand from this that the goods in controversy were stored in the Manufactures Building, and that after the exposition had closed the defendant removed from such building the appliances specified for putting out fires; but there is nothing in the count to show any duty on the defendant to keep and maintain such appliances in said building after it had become a mere storage place. Proof that fire-extinguishing appliances were needful during the exposition would not necessarily disclose the need of such appliances after the exposition had ended. There is nothing in the count to distinguish the building which contained plaintiff's goods from any other building in which such goods happened to be temporarily stored. It cannot be said, therefore, that

in removing said appliances defendant violated any obligation or duty owing by it to the plaintiff. The count contains the averment that defendant "immediately upon the close of said exposition * * * did withdraw, abolish, and discontinue almost the entire fire department maintained by said defendant in connection with said exposition." But the presence of a "fire department" during the exposition does not necessarily imply a need of it after the exposition had closed. The statement that defendant "left said fire protection wholly inadequate," if understood as anything more than the introduction to the particular averment which follows, would not necessarily involve proof other than that the means of putting out the fire if one should occur were not provided by defendant. It is not specified in the count how the fire originated, whether in the Manufactures Building or in some other building on the ground, or in some other building in the neighborhood, or in the goods themselves said to have been damaged and destroyed by fire and water. Nor does the count impute negligence of any kind as having caused or originated the fire. In addition to the words "neglected to take proper care of or precautions in regard to said goods," commented on in our review of the first count, the second count contains the averment that "defendant * * * upon the expiration of said exposition did not furnish said plaintiff with proper means or vehicles for removing said goods from the buildings of defendant, and obstructed plaintiff in removing its said goods." But it nowhere appears, nor would facts and circumstances in proof of this averment or any other in the count have shown necessarily, that such refusal or obstruction continued up to the time of the fire, or up to a date which would not have left a reasonable interval prior to the fire in which plaintiff might have removed the goods; nor that such refusal or obstruction was wrongful or not in accord with rules which plaintiff had impliedly agreed to in voluntarily placing its goods on defendant's premises. The count contains also the statement that "defendant * * * immediately upon the close of said exposition * * * did withdraw almost entirely all police protection from said buildings and goods." No public statute which vested defendant with the governmental function of providing "police protection" is referred to, nor is there anything in the count from which the inference that defendant corporation was so vested arises. The duty of defendant to take care of plaintiff's goods, if this duty were extant at all, and its duties to others with reference to fires on its own premises, were quite independent of the matter of providing police protection. That the reference to "police protection" adds in any manner to the significance of the count is not apparent.

In the third count, what appears to have been deemed the decisive showing of fact preliminary to the final catastrophe, if it have any significance at all, imports or suggests a trespass or wrongful and forceful interference by defendant with plaintiff's dominion over its own goods, entailing the destruction of the goods by fire in aggravation thereof. Trespass on the case is appropriate to that species of tort wherein by neglect of some duty or obligation a consequential damage unaccompanied by force has resulted to the plaintiff, and not to that kind of wrong committed with force and arms wherein

the injury is immediate and directly involved in the wrongful act itself, though that injury which is of the gist of the action may be accompanied by some other matter which goes merely in aggravation of damages. The defendant was summoned to answer in a plea of trespass on the case, and the introductory part of the declaration is framed on the theory that a cause of action in that form is to be stated in the counts which follow. Nevertheless, if the third count clearly discloses a trespass the declaration should be held good. The showing referred to is that on the 8th of January, 1894, a fire occurred in one of the buildings on defendant's premises and that "said defendant, by force and through its police and guards, prevented plaintiff moving its goods beyond the reach of said fire to a place of safety, and compelled plaintiff to leave said goods where they would be exposed to danger from fire; and in consequence thereof, and without fault or negligence on the part of plaintiff, said plaintiff's goods in said building were, on, to wit, the said 8th day of January, 1894, consumed, broken, damaged and destroyed by fire and water." No act or conduct by defendant's "police and guards" amounting to a trespass or in itself wrongful, or wrongful as being in violation of any duty owed by defendant to plaintiff, and which could have had the effect of preventing plaintiff from "moving its goods beyond the reach of said fire to a place of safety," or of compelling "plaintiff to leave said goods where they would be exposed to danger from fire," is stated. It is not even averred that the alleged resultant prevention or compulsion was wrongful or illegal. Active exertions by defendant's "police and guards" to extinguish the fire or stop its spreading and destroying property, including, possibly, that which belonged to plaintiff itself, may have had the preventive or compulsive effect stated. Facts and circumstances in proof of the averment, as made, would not have necessarily involved anything wrongful or illegal on the part of defendant; nor would such facts or circumstances have necessarily developed a duty owing by defendant to plaintiff, and a breach of the same with the loss of plaintiff's goods by fire and water as a consequence. The third count also contains the statement that defendant "took away from plaintiff certain railroad cars which it had obtained in which to ship its said goods and manufactures." It is not stated that the cars were taken by force, or that plaintiff had any right or proprietorship over them, or that plaintiff did not surrender them willingly, or that the taking was wrongful. For the rest, the third count is merely a repetition of the second. The words "and said fault and negligence of defendant caused a fire in said building," do not distinguish the third count from the second. The words "said fault and negligence" refer to acts and doings of defendant not in themselves wrongful or in disregard of any duty due to plaintiff, nor having causal relation as originating the fire.

From the general tenor of this declaration as a whole, and so far as any definite theory of liability may be surmised as present in the mind of the pleader, one purpose was to hold the defendant for not providing and maintaining appliances to extinguish fires, as fires might occur, but it was not his understanding that any statement or recital of fact was necessary to raise the obligation of providing and

maintaining such appliances. Upon that point he made no showing whatever. There is no issuable averment in either of the counts the proof of which necessarily involved a showing of facts and circumstances to the point that at and immediately before the time of the alleged loss by fire and water the construction, surroundings, occupancy, or contents of the building wherein the loss occurred were of such character, with reference to the possibility and probability of accidental fire, as raised the duty on defendant to provide and keep at hand and in readiness for use means and appliances for extinguishing such fires. There is not here a cause of action defectively stated so that a verdict aids it, but the cause of action itself is defective. Said the supreme court of Illinois, in Chatterton v. Saul, 16 Ill. 149:

"After verdict, it may be intended that every essential fact alleged in the declaration, or fairly to be implied from what is alleged, was established on the trial, but where the declaration fails to show that plaintiff has a cause of action there is no room for intendment or presumption. This is not a case in which a cause of action is defectively or inaccurately stated, but it is one where the declaration fails to show that the plaintiff has any cause of action whatever."

See, also, Barnes v. Brookman, 107 Ill. 317; Eilenberger v. Nelson, 64 Ill. App. 277; Railway Co. v. Hoyt, 50 Ill. App. 583; Railroad Co. v. Hines, 132 Ill. 161, 23 N. E. 1021; Matson v. Swanson, 131 Ill. 263, 23 N. E. 595; People v. City of Spring Valley, 129 Ill. 178, 21 N. E. 843. In the first volume of Chitty's Pleadings (on page 705) is found the following on the matter of intendment after verdict:

"The general principle upon which it depends appears to be that where there is any defect, imperfection, or omission, in any pleading, whether in substance or in form, which would have been a fatal objection upon demurrer, yet, if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give, or the jury would have given, the verdict, such defect, imperfection, or omission is cured by the verdict. * * * On the other hand, the particular thing which is presumed to have been proved must always be such as can be implied from the allegations on the record, by fair and reasonable intendment."

And again on page 713:

"The main rule on the subject of intendment is that a verdict will aid a defective statement of title, but will never assist a statement of a defective title or cause of action."

The declaration in the case at bar cannot be held good unless it be law that an owner of a house or of premises upon which the goods of another happen to be in store for the time being is liable for the destruction of said goods by fire on the sole ground that he did not keep and maintain on said premises appliances and instrumentalities for extinguishing accidental fires. The occupant of a dwelling house, for instance, would be so liable on the theory of this declaration. This court takes judicial notice of the federal statute approved April 25, 1890, touching the international exposition at Chicago, and, doubtless, also of the president's proclamation of December 24, 1890, on that subject. These publications certainly contain nothing in aid of the declaration above criticised in this opinion. What bearing the statute may have, if any, on the controversy between these litigants is

not now a question before this court. In Illinois, where a motion in arrest of judgment prevails the suit is not at once dismissed as of course, but new pleadings are ordered by the court. In the case at bar the judgment is reversed, and the cause remanded to the circuit court with the direction that plaintiff be required to file a new declaration within a time to be fixed by the court, and in default thereof that the suit be dismissed.

WOODS, Circuit Judge. While assenting fully to the foregoing opinion, I am the more ready to concur in reversing the judgment in question because of the ground upon which it was based. Regardless of "the exempting clauses contained in the regulations promulgated by the director general," I think it cannot be true, as declared in the opinion below, that "nothing short of exhaustive carefulness, all the circumstances considered," could "fully meet the moral and legal obligations imposed," or that it is "the law of this case that the management of the exposition was under legal obligations to safeguard, by the highest intelligence and protection, compatible with the ephemeral character of the buildings, the exhibits of the plaintiff." At most, the plaintiff in error was bound, I think, to exercise ordinary care, and therefore liable only in case of a failure of the management to use ordinary prudence according to the circumstances to protect the exhibits.