CENTRAAL STIKSTOF VERKOOPKAN-
TOOR N.V., a body corporate,
Plaintiff,

v.

PENSACOLA PORT AUTHORITY, a
body corporate, Defendant.

No. 1154.

United States District Court
N. D. Florida,
Pensacola Division.

May 29, 1962.

Wm. Fisher, Jr. of Fisher & Hepner, Pensacola, Fla., Russell T. Mount, Mendes & Mount, New York City, for plaintiff.

E. Dixie Beggs of Beggs, Lane, Daniel, Middlebrooks & Gaines, Pensacola, Fla., for defendant.

CARSWELL, Chief Judge.

This has to do with a rapidly spreading and highly destructive fire of unknown origin along the waterfront of Pensacola Bay, and brings to mind the tale of Mrs. O'Leary. As we may surmise, the consequences of her maintaining inflammables and fire near her kicking cow might well have visited upon that unfortunate soul full legal liability for the conflagration of Chicago. But it should be noted at the outset here that the fire in this defendant's building is not alleged to have been attributable to any negligent act of defendant, neither by keeping a kicking cow with a burning lantern nor by any other act of omission or commission creating an ominously hazardous condition relative to fire. The gist of the complaint against this defendant is that our figurative Mrs. O'Leary had a building which would burn, that it did ignite somehow, that she did not

have fire fighting equipment, watchman or alarms handy, that the wind blew in plaintiff's direction and plaintiff's property was destroyed.

Defendant moves to dismiss.

A detailed examination of the complaint is made here in the light of the liberality of the Rules governing pleadings and the consistently untechnical and non-constrictive application those Rules have been properly given since their adoption.

Jurisdiction is based upon alleged diversity of citizenship between the parties. The complaint asserts that defendant owned and maintained certain docks and warehouses located on Pensacola Bay, Florida. The property consisted of a wooden pier on which were located two warehouses, one constructed of wood and the other of metal. Both warehouses contained materials such as cotton waste, rolled newsprint and bagged soy bean meal. It is alleged that these materials, the warehouses and the pier were highly combustible, defined by Webster as apt to catch fire, or capable of burning.

To the west of defendant's property, separated by 115 feet of open water area, was a pier owned by the Louisville and Nashville Railway Company, not a party in this litigation. On this pier was situated a warehouse of wooden construction. This warehouse contained, among other things, large quantities of nitrolime and paper products owned by plaintiff. This L&N pier, warehouse and its contents were also alleged to be highly combustible.

The complaint states further that despite the combustible nature of *defendant's* piers and warehouses and their contents and despite the combustible nature of the neighboring L&N pier, warehouse and its contents, defendant did not employ a night watchman; did not maintain fire hoses, fire hydrants or other fire prevention or fire fighting apparatus on its docks or in its warehouses, nor did defendant provide a method whereby an alarm could be quickly communicated to appropriate fire fighting agencies.

On November 20, 1958 at approximately 11:00 P.M. a small fire of *unknown origin* was discovered on defendant's pier by a crew member of a vessel which was secured alongside. At the time it was discovered the fire was approximately 4 feet in circumference and about 6 feet in height. Due to the immediate absence of fire hoses and other fire fighting apparatus the crew of the vessel was unsuccessful in its attempt to control the fire. One of the men went to sound an alarm. Finding no method available to send the alarm, the crewman had to travel some distance before locating a watchman near the shore end of the dock where he arranged for a message to be sent to the Pensacola Fire Department. By the time help arrived the fire was out of control.

It is alleged that after this a northeast wind blew the fire from defendant's premises to the piers, docks and warehouses owned by L&N. Plaintiff's property located within the L&N warehouse was consequently destroyed.

Defendant moves for dismissal on two grounds, the first being failure of complaint to state a claim upon which relief can be granted, and the second being the failure of the complaint to allege facts sufficient to support jurisdiction on the basis of diversity of citizenship. This jurisdictional question is taken first.

■■ It is clear that in order for this Court to acquire jurisdiction in cases of diversity of citizenship between the parties, the complaint must show the jurisdictional basis on its face. The complaint here alleges only that the plaintiff is a body corporate with headquarters in The Hague, Holland. This allegation is insufficient in view of 28 U.S.C. § 1332, wherein the place of incorporation, *and* the principal place of business, determine citizenship for the purpose of conferring jurisdiction on this Court. Although the allegation of jurisdiction is thus insufficient in that the place of incorporation is unstated this omission alone would not require dismissal if plaintiff could, as would be permitted, amend the allegation to conform to the statute.

A more serious question arises, however, with respect to the cause of action itself. The Court finds that the complaint does not state a claim against defendant for which this Court could grant the relief sought.

The complaint has been summarized before. More particularly, it states that the fire originated through no fault or negligence of defendant on defendant's property and that it subsequently was windborne across 115 feet of open water to docks and warehouses owned by a third person. The only negligence asserted is the failure of defendant to have fire extinguishing equipment, alarm systems and/or a watchman on *defendant's* premises.

■ For there to be any negligence in this regard, there must, of course, be a duty on the part of defendant to equip its warehouse and pier with fire extinguishing apparatus, alarms or watchman, some or all. While the measurable nature of a duty defined by law is a question of fact, the determination of the very existence and definition of a duty is perforce a question of law. The determination of any question of duty—that is, whether the defendant stands in such a relation to the plaintiff that the law will impose upon him any obligation of reasonable conduct for the benefit of the plaintiff is one of law, and is never for the jury. See Prosser, Torts, Section 50 at 281. Weis-Patterson Lumber Co. v. King, 131 Fla. 342, 177 So. 313 (Fla. 1957). Nowhere in the complaint is that duty upon defendant specifically set forth. In order for the sufficiency of this complaint to be upheld, the Court would be required to find an implied duty from the alleged factual account of what transpired. Such implied duty must be founded upon a statute or in its absence at common law. Finding no duty imposed by statute in this regard, the Court must look to the common law, and, this, means here the common law of the State of Florida.

■ Unless and until the owner is aware of the existence of the fire, it is generally held that there is no obligation on the owner of a building where a fire accidentally originated to exercise reasonable care to prevent escape of the fire to adjoining premises. Stated differently, in the absence of notice of the fire, an owner may not be considered negligent in failing to prevent the spread of the fire to adjoining premises. 65 C.J.S. Negligence § 72 at page 567.

In Weis-Patterson Lumber Co. v. King, supra, 177 So. at page 320, the Florida Supreme Court stated: "We conceive the rule to be, in cases where one seeks to recover for damages sustained by fire spreading from the premises of another to and destroying the property of the claimant, the liability, in the absence of contrary controlling statute, depends upon the existence of (1) negligence in the origin of the fire, or (2) negligence in regard to its control after it has been started, or (3), under some circumstances, in failing to provide means for its extinguishment." Citing Orander v. Stafford, 98 W.Va. 499, 127 S.E. 330, 42 A.L.R. 780. In support of these rulings the Florida Supreme Court cited the cases of Musselwhite v. Receivers, 4 Hughes 166, Fed.Cas.No. 9,972; World's Columbian Exposition Co. v. Republic of France, 91 F. 64, 33 C.C.A. 333; Bock v. Grooms, 2 Neb. (Unof.) 803, 92 N.W. 603; Vansyoc v. Freewater Cemetery Ass'n, 63 Neb. 143, 88 N.W. 162; Planter's Warehouse & Compress Co. v. Taylor, 64 Ark. 307, 42 S.W. 279; Sweeney v. Merrill, 38 Kan. 216, 16 P. 454, 5 Am.St. Rep. 734; McNally v. Colwell, 91 Mich. 527, 529, 52 N.W. 70, 30 Am.St.Rep. 494; Catron v. Nichols, 81 Mo. 80, 51 Am. Rep. 222.

An analysis of these cases reveals that Musselwhite, Planter's Catron and Sweeney dealt with situations where there was a question of negligence in the *origin* of the fire. They are, therefore, inapplicable here. The Bock, Vansyoc, as well as Sweeney, cases dealt with the question of negligence in controlling the fire after defendant had *started* it. Since the defendant here is not charged in this complaint with either violation of duty in

this regard, it is apparent that these cases are also inapplicable here.

In World's Columbian Exposition Co. v. Republic of France, supra, the Court held that negligence in originating a fire or in causing or permitting it to be started must be treated basically as one thing. Negligence in failing to provide and to have at hand means and appliances for extinguishing an accidental fire, the origin of which responsibility could not attach is quite another thing. It was there said, quoting Bevan on Negligence, Volume 1, Page 595:

> "A question has been raised whether, in the event of a fire happening without negligence, the person responsible for the premises can be rendered liable, 'because, in the opinion of a jury, he did not keep on hand at all times proper appliances to put out a fire in case one should accidentally arise.' There seems to exist a difference of obligation in respect to the different character of buildings involved. Care must in all cases be proportioned to risk. Since, then, the breaking out of fire in dwelling houses and buildings used for domestic purposes is of uncommon occurrence, the provision of appliances to put out fire is not necessary. In the use of fire for manufacturing purposes there is a difference; the risk is greater, and constant care is in some cases required to prevent its escape. Accordingly, where fires are liable to originate in engine and boiler rooms, and the construction of the building is such that the surroundings are inflammable, an obligation arises not only to use care in tending the furnaces that are requisite for carrying on the work, but appliances for extinguishing fire, if it should break bounds, should be at hand; for this is a precaution which every ordinarily prudent man would adopt for the preservation of his own property, and the neglect of it is negligence."

In McNally v. Colwell, supra, the Court held that where there was no duty whatsoever to provide appliances for extinguishing a fire once started, there still might be liability for negligence in the origin of the fire. On the other hand one who under the circumstances was bound to provide and had, in fact, provided reasonable means and appliances for extinguishing fires and to whom no negligence in the performance of that particular duty may be imputed may still be liable for negligence in starting and originating a particular fire notwithstanding his reasonable means for extinguishing fires which destroyed or damaged the property of plaintiff.

In some cases a duty has been implied from the mere provision or employment of defendant as a physician or an innkeeper; in others, from the relation of things to each other, as a railway crossing and a public highway, but, in all cases, the complaint in a negligence action must show such facts as by law make it a duty to do the thing neglected. Funk v. Piper, 50 Ill.App. 163.

In this case the Court finds that the complaint fails utterly to show a duty owing from defendant to plaintiff to maintain fire extinguishing apparatus, alarms and watchman. Nowhere in the common law has the Court been able to find a duty on a property owner to provide these things merely because it is possible that the adjacent property, being combustible, could catch fire. This is valid in the absence of allegation that the premises contained dangerously inflammable or explosive materials or that the defendant used fire for its own purposes on the premises. Such allegations raise a distinctly different standard. The imposition of such a duty here could lead to results at once harsh and unreasonable.

Giving full credence and weight to plaintiff's facts plead here, as the Court must on a motion to dismiss, to put defendant to trial on a theory of negligence here would be to hold that an owner of a building made of wood must in each instance maintain fire fighting equipment for automatic use, or must maintain fire fighting equipment for use by passersby, or must maintain some system of alarm,

or must hire a watchman for such purposes. The failure to do one or more of these things would be negligence merely because the building was constructed of wood which is capable of burning and contained products also capable of burning. This would be true even though the owner was not said to be negligent in starting the fire. It would be to say that a reasonable man, knowing that these things will burn, must anticipate that it is possible that they will, in fact, be ignited from some source be it arson, act of God, or otherwise, and that, charged with such knowledge of such possibility, he should have foreseen, as that term was enunciated by Justice Cardozo in his classical treatment in Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99, 59 A.L.R. 1253 (1928), that subsequent events would destroy defendant's property.

This, of course, clearly does not mean there are no circumstances under which the legal duty of due care to a neighbor's property would carry with it the responsibility to establish and maintain reasonably adequate methods to contain or control fire originating on one's property regardless of its use or its particular construction or contents. For example, such duty does arise, as noted before, if the ignition of the fire is chargeable to the defendant, or if he uses fire or stores explosives, etc., in such manner as to create a clearly hazardous condition for himself and his neighbors. But none of these things are here stated. Nor are they suggested or hinted in the facts plead. What has been stated is not enough to raise a duty cognizable as actionable negligence under the law.

The Court cannot go so far in the creation of specific duty. Virtually all buildings constructed of wood are highly combustible, i. e., they will burn if ignited. It cannot be said as a matter of law that there is such great or foreseeable danger in maintaining premises made of wood so as to make every person liable for fire spreading to adjoining premises unless there be handy in every instance fire fighting equipment, watchmen and/or alarms. If such duty is to evolve upon owners of property this should be done by statute. There is none, and the common law affords no basis for recovery.

Order dismissing complaint will be entered accordingly.