## RELIABLE INCUBATOR & BROODER CO. v. STAHL.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1901.)

### No. 626.

**1. CIRCUIT COURT OF APPEALS—JURISDICTION.**

Primarily, at least, the assignment of errors determines the scope of an appeal to the circuit court of appeals, and if, in any case, errors other than the lack of jurisdiction in the lower court are asserted, the whole case is before the court, including the question of jurisdiction, if there be such question, notwithstanding it may be found on examination that for the lack of a proper bill of exceptions, or for failure to comply with the rules of practice, other questions are not presented, or are so imperfectly presented that the court might refuse to consider them.

**2. APPEAL—QUESTIONS PRESENTED FOR REVIEW.**

The fundamental question whether the facts alleged in a declaration, aided as far as may be by the verdict, are sufficient to sustain a judgment for the plaintiff, arises on an appeal, notwithstanding the lack of a bill of exceptions; and, under rule 11 of the circuit court of appeals, if the lack of essential facts be plain, the court may take cognizance of the error, though it is not well assigned.

**8. JURISDICTION OF FEDERAL COURTS — ACTION FOR INFRINGEMENT OF PATENT —JOINDER OF CAUSES OF ACTION.**

Where the gravamen of an action is the alleged breach of a contract of license by defendant, and the parties are citizens of the same state, the plaintiff cannot invoke the jurisdiction of a federal court by joining in the declaration a minor claim, imperfectly stated, for infringement of a patent.

In Error to the Circuit Court of the United States for the Southern District of Illinois.

This action was brought by George H. Stahl against the Reliable Incubator & Brooder Company. A motion made by the defendant in error to strike from the record the bill of exceptions has been sustained (42 C. C. A. 522, 102 Fed. 590), but it is still insisted by the plaintiff in error that upon the face of the declaration the court below was without jurisdiction of the cause.

The second amended declaration, on which the trial was had, purporting to be for trespass on the case, shows that both parties were citizens of Illinois when the suit was commenced; that on November 1, 1892, the plaintiff was a resident of the city of Quincy, and was engaged in the business of manufacturing and selling, and was the owner of letters patent of the United States pertaining to, incubators and incubating and brooding devices and appliances; that at the same time and place the defendant was engaged in a similar business in competition with the plaintiff, and being so engaged they entered into a contract, a copy of which is set out; that afterwards, on October 1, 1893, differences and disputes having arisen between them, they entered into a new contract in lieu of the first, a copy of which is set out, and of which the provisions bearing upon the present question are as follows: "Now, therefore, this agreement made and entered into this 21st day of October, A. D. 1893, by and between George H. Stahl, of the first part, and John W. Myers, William B. Dean, Clarence A. Myers, and the Reliable Incubator and Brooder Company, a corporation, parties of the second part, witnesseth: That the said party of the first part is the owner of certain letters patent upon incubators bearing dates and numbers as follows, to wit [a list of 38 patents], * * * [and,] in consideration of the premises herein set forth, contracts to license and permit, and hereby does license and permit, the parties of the second part to make, use, and sell, anywhere in the United States, incubators of the same pattern and style as are now made and sold by them under the name and style of the Reliable Incubator and Brooder Company and similar to the sample furnished by the said party of the first part, and to give to them the full protection of all of his said letters patent, against all parties whatsoever, in the manufacture, use, and sale of the said incubator in its present style and pattern; but this license is not to be construed as authority to said party of the second part to make or sell any other incubator, or to modify the said incubator so as to incorporate any additional features or improvements in incubators which may be covered by any of the letters patent of the said party of the first part, and the said party of the first part expressly reserves to himself all rights to make, use, and sell all incubators and improvements covered by his said letters patent, and to grant license to and contract with all other parties concerning the same. And the said parties of the second part, for and in consideration of the permission and license set forth, and the further consideration of the protection of the aforesaid letters patent of the party of the first part, hereby promise and agree and contract to pay to the said party of the first part the sum of 75c. for each and every incubator of capacity not to exceed 55 eggs, and known as No. 0, and one dollar for each and every other incubator made and sold, leased, or rented by them or their agents after the 21st day of October, 1893. * * * It is further expressly agreed that the said parties of the second part shall make on the first day of each month a sworn statement to the said party of the first part of the number of incubators made, used, and sold by them and their agents for and during the preceding month, and thereupon to pay to the party of the first part the amount found due him according to the terms of this contract at the rate of $1 for each incubator, except the 55-egg capacity incubator, and 75c. for each incubator of that size and number, and, [for] the failure to make

such report and pay over all sums found due according to the terms of this contract, said party of the first part may, at his option, terminate this contract upon giving said party of the second part twenty days' notice in writing of his election so to do.  *  *  *  It is agreed that this contract shall continue in force for the term of ten years from the 1st day of November, A. D. 1892, but the parties of the second part shall not assign their interest herein, except upon the written consent of the said party of the first part. In witness whereof," etc.

Compliance with the contract by the defendant until February 1, 1896, is next alleged, and then the declaration proceeds: "And the plaintiff avers that thereby and by reason of the premises the defendant then and there became, and was and still is, the licensee of the plaintiff under the patents mentioned in said contract of license last aforesaid; and it became and was then and there the duty of the said defendant not to make its said incubators in any style or pattern different in any respect from the said style and pattern in which it was licensed to make the same by the terms, conditions, and limitation of the said last-mentioned contract of license in writing, and not to modify the said incubators so as to embrace or include therein any device or contrivance covered by or embraced in the claims or specifications of any of the plaintiff's said patents described in the said contract of license secondly hereinabove set forth, and to make truthful and complete monthly reports of the number and sizes of its said incubators made and sold by it, and to pay the license fees thereon according to the tenor and effect of the said last-mentioned contract of license, and to maintain and not to impeach or deny with and against the public the validity of the said letters patent in the said contract of license set forth, and not to deny or in any manner impeach the novelty and utility of the devices embraced in or covered by its said license, or the title of the plaintiff in and to the letters patent set forth in the said secondly above set forth contract of license. Yet the defendant wholly disregarded its said duties and obligations to the plaintiff, at and within the United States, to wit, the city of Quincy, in the county of Adams and state of Illinois, aforesaid, and during the term of duration of the said contract of license secondly hereinabove set forth, and while said last-mentioned contract of license was in full force and effect and binding upon all the parties thereto, and contrary to the terms and conditions thereof, and against the statutes of the United States in relation to letters patent of the United States, and wrongfully and fraudulently intending and designing to injure and more effectually to compete with the plaintiff in his said business, and to deprive him of the just benefit and advantage of his said letters patent, and to deprive him of the large profit he would otherwise have made in the manufacture of and sale of incubators and kindred devices, and to defraud him of the license fees justly due him under and by reason of the said last-mentioned contract of license prior to the commencement of this suit, to wit, between the 21st day of October, 1893, and the sixteenth day of April, 1896, made 4,500 of its said incubators in styles and patterns different from the style and pattern in which it was and had been making the same at the time of and prior to the making of the said contract of license hereinabove secondly set forth, and different from the sample mentioned in said contract of license, and put upon sale and sold and disposed of the same in the markets of the United States, and modified and changed the style and pattern of its said incubators by omitting therefrom the water tank, which was a feature of and in the style and pattern of incubator the defendant was licensed to make as aforesaid, and at the time and place aforesaid made 2,000 other incubators in such said changed style and pattern, and sold and disposed of the same in the markets of the United States, and changed and modified the said style and pattern in which it was licensed as aforesaid to make the said incubators by omitting therefrom certain openings with thumb-plate covers for the purpose of ventilating, and substituting therefor additional openings in the bottom of the incubators, covered with channeled blocks, and by extending the incubator frame at one end so as to form and include a chamber surrounding the lamp or heating apparatus, and by constructing a continuous air space in the two sides and one end of the incubator frame, with openings from the chamber about the lamp into such air space, and by changing the form of the hood or warm air conduit above the lamp so as to allow the heat from the

lamp to pass directly upward into the open air when not obstructed by a damper or a cover, and by attaching a certain heat-regulating device, known as and called by the defendant the 'Greenleaf Heat-Regulating Device,' and of this said so changed and altered style and pattern last above described the defendant made 2,000 other incubators, and sold and disposed of the same in the markets of the United States. And at the same time and place the defendant changed and altered the said licensed style and pattern of its said incubators by using a different form of metal pipe as a conduit for hot air, and by placing a metal shield over the middle portion of such pipe, and by divers other pretended and immaterial changes in form, style, and pattern; and of incubators of the last above mentioned changed and altered style and pattern the defendant made 2,000 other incubators, and sold and disposed of the same in the markets of the United States. And at the time and place aforesaid the said defendant changed, altered, and modified its said style and pattern of incubator in which it was licensed as aforesaid to make its said incubators so as to include and embrace a certain heat-regulating device operated by the expansion and contraction of mercury with some other liquid in a tube in varying temperatures, which said heat-regulating device was and is embraced under and covered by the claims and specifications of letters patent of the United States set out and described in said contract of license secondly hereinafter set forth as No. 230,086, July 13, 1880, the same being particularly described in the claims of said patent No. 5 and 6; and of the said incubators so modified and changed in style and pattern as lastly hereinabove set forth the defendant at the time and place aforesaid made 2,000 incubators, and sold and disposed of the same in the markets of the United States. And the defendant at the time and place aforesaid continually during the time aforesaid made divers other changes and alterations in the style and pattern of its said incubators, and made and sold the same in such changed and altered style, and continually denied, impeached, and disparaged the validity, novelty, and utility of the plaintiff's said patents under which it was licensed as aforesaid to manufacture and sell its incubators, and fraudulently pretended that its said incubators were and are not covered and embraced in the said contracts of license, or either of them, and refused to pay to the plaintiff, and has not paid to the plaintiff, any of the license fees due by the terms of the secondly above set forth contract of license since the said first day of February, 1896, and since said last-mentioned date and up to the commencement of this suit the defendant had refused to and has not made to the plaintiff any report, monthly or otherwise, of the number and sizes of the incubators by it made and sold under said license, and prior to said first day of February, 1896, and from thence hitherto from the said twenty-first day of October, 1893, the said defendant made partial and incomplete reports of the number and sizes of the incubators made and sold by it under said license, and wholly failed, neglected, and refused to report to the plaintiff a large number of such incubators made and sold by it under said license, to wit, 2,000 of such incubators, and has never paid, and has continually refused to pay, the said license fees mentioned and stipulated in said contract of license, and has withheld the said fees from the plaintiff in a large sum, to wit, the sum of $4,000, whereby and by reason of the premises the plaintiff has been and is greatly injured, and has been deprived of large royalties which he might and otherwise would have derived from the manufacture and sale of incubators in his said business, and from the sale of licenses to make, use, and sell incubators of the style and description licensed to be made by the defendant in the said contracts of license, and has sustained actual damage thereby to the amount of $10,000, whereby, by force of the statutes of the United States, a right of action has accrued to the said plaintiff to recover the said actual damages, and such additional amount, not exceeding in the whole three times the amount of such actual damages, as the court may see fit to adjudge and order, besides costs. Yet the defendant, though often requested so to do, has never paid the same, nor any part thereof, but has refused, and still refuses, so to do, and therefore the plaintiff brings this suit."

Frank D. Thomason, for plaintiff in error.

J. F. Carrott, for defendant in error.

Before WOODS and GROSSCUP, Circuit Judges, and BUNN, District Judge.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The bill of exceptions having been stricken out, the point is made by the appellee that the "only question now raised upon the record is that of the jurisdiction of the lower court," and that "the writ of error should be dismissed for want of jurisdiction in this court to entertain it." Manufacturing Co. v. Barber, 18 U. S. App. 476, 9 C. C. A. 79, 60 Fed. 465; Beck & Pauli Lithographing Co. v. Wacker & Birk Brewing & Malting Co., 46 U. S. App. 486, 22 C. C. A. 11, 76 Fed. 10,—are cited. This proposition assumes that, as the case stood before the bill of exceptions had been stricken out, the question of jurisdiction, in connection with other questions, was within the rightful cognizance of this court, and, if so, the power to decide it was not lost by passing upon or disposing of other questions first. A party against whom a judgment is rendered, instead of going to the supreme court upon a certificate of the question of jurisdiction alone, may take "the whole case" to the circuit court of appeals; and that court may then decide, or, if it deem proper, certify the question of jurisdiction to the supreme court. This was declared in McLish v. Roff, 141 U. S. 661, 12 Sup. Ct. 118, 35 L. Ed. 893, and reaffirmed in U. S. v. Jahn, 155 U. S. 109, 15 Sup. Ct. 39, 39 L. Ed. 87, in an opinion from which we quote the following:

"Of course, the power to certify assumes the power to decide." "Although the question of jurisdiction was not put in issue in the circuit court, still, as the objection in the circuit court of appeals went to jurisdiction over the subject-matter, no omission in that regard could supply absolute want of power, and the circuit court of appeals was bound to take notice of the question." "It is conceded that the United States had assigned errors on the merits, as well as the error under consideration, and as the question of jurisdiction lay at the threshold," etc.

Just what scope may be given to the phrase "upon the whole case," as used by the supreme court in these cases, is uncertain. In the opinion of this court in Beck & Pauli Lithographing Co. v. Wacker & Birk Brewing & Malting Co., supra, it was said:

"It is clear, therefore, upon the weight of authority, that a question of jurisdiction alone may not be taken to a court of appeals, though, on principle, once the supreme court had enunciated the doctrine of McLish v. Roff, it is difficult to see why such a question may not be entertained and decided by one of those courts as well when standing alone and constituting the whole case as when accompanied with another or other questions, which might be injected on mere pretense, in order to obviate the objection to jurisdiction."

In this case, as in U. S. v. Jahn, errors were assigned upon the merits; and this court, being bound to take notice of the question of jurisdiction, as one lying at the threshold, had power to dispose of it before considering the motion to suppress the bill of exceptions. Primarily, at least, the assignment of errors determines the scope of an appeal, and, if in any case errors other than the lack of jurisdiction in the lower court are asserted, the "whole case" is before the court, including the question of jurisdiction, if there be such question, notwithstanding it may be found on an examination that

for the lack of a proper bill of exceptions, or for failure to comply with the rules of practice, the other questions are not presented, or so imperfectly presented that the court might refuse to consider them. By rules 11 and 24 (31 C. C. A. cxlvi., clxvi., 90 Fed. cxlvi., clxvi.) this court, at its option, may notice errors, though not assigned or specified, and though the question be not saved according to the strict rules of practice, if it be apparent of record that the point was contested, was not waived in the court below, and involved the merits of the case. Whether a bill of exceptions is properly in the record is not a primary question, but only an incident to the disposition of such alleged errors as the bill was designed to show. Under the rules the bill may or may not be indispensable, and whether it be so or not should not affect the power of the court over the question, whether the lower court had jurisdiction, because if that court was without jurisdiction the court of errors or appeals should so determine at the threshold, and, without entering upon any other question, remand the case for proper disposition below. It is, of course, true that every court must first determine its own jurisdiction, and, if it depends necessarily upon the question of the validity of a bill of exceptions in the record, that question, of course, must be determined as a part of the primary question; but the more reasonable and practicable course, indicated by the supreme court in U. S. v. Jahn, supra, is to look to the assignment of errors for the scope of the questions presented, and whether or not they can be disposed of because a bill of exceptions is lacking or may be suppressed, or for other technical reason, is not a question which must be answered before the court can consider whether the court below had jurisdiction of the case.

If, however, the case were to be considered as if there had been no bill of exceptions in the record, and the specifications of error dependent thereon were eliminated, the power of this court to consider the question of the jurisdiction below would still be clear, since, aside from that question, the sufficiency of the declaration to sustain the judgment, upon any theory of the nature of the cause of action, is disputed. The last specification of error is that the court erred in entering judgment for the plaintiff and against the defendant. An assignment so general as this the court may refuse to consider, but is not bound to do so. See World's Columbian Exposition Co. v. Republic of France, 33 C. C. A. 333, 91 Fed. 64. As was there said, "It is fundamental that a judgment cannot stand unless the facts of record, apart from any showing by the bill of exceptions, aided as far as may be by the verdict, will support it;" and, if the lack of essential facts be plain, this court, in accordance with rule 11, may take cognizance of the error, though it be not well assigned. It cannot be said in this case that, besides the question of jurisdiction of the court over the parties and the subject-matter, there does not arise the question of the sufficiency of facts of record to support the judgment rendered. To illustrate: It is pointed out that the declaration contains no averment of ownership of the patents referred to at and during the time covered by the transactions out of which the right of action is supposed to have arisen. It may be, as insisted, that in that and other particulars the verdict has cured whatever de-

fect there was in the declaration; but to say that is only to demonstrate the presence of the question, and to refute the objection that this court is without power to proceed further in the case. If the court below had jurisdiction, it was confessedly not because of diverse citizenship of the parties, but because the action was for the infringement of patents for inventions. Judged by its averments, however, the declaration was drawn upon the theory of enforcing, or of recovering damages for the breach of, rights, duties, and obligations arising out of contract, rather than to recover for the infringement of letters patent. It begins, it is true, by professing to be a plea of trespass upon the case, and ends by asserting a right by force of the statutes of the United States to recover the actual damages alleged, and such additional amount as the court should see fit to allow, not exceeding three times the amount of actual damages; but such a beginning and ending can amount to nothing unless in the body of the pleading it is shown by proper averment that the plaintiff is entitled to recover of the defendant damages for infringement of a patent right. That does not appear in this declaration. It is shown that at a date more than three years prior to the bringing of this suit, and two years or more before the transactions out of which the supposed cause of action arose, the plaintiff was the owner of, and gave the defendant the right to use within restricted limits, a large number of patented inventions; and it is charged that after two years' compliance the plaintiff in error, in violation of the contract of license, modified the article, which it was authorized to make only according to a pattern agreed upon, so as to include other elements, but it is not alleged that in so doing the defendant infringed any patent right then or theretofore owned by the plaintiff. It is alleged that the defendant manufactured and sold 4,500 incubators which in specified particulars differed from the sample, 2,000 others that differed in certain other respects, 2,000 others that differed as stated, and finally 2,000 others were so modified as to include a certain heat-regulating device, which it is alleged "was and is embraced under and covered by the claims and specifications of letters patent of the United States set out and described in said contract of license secondly hereinafter [before] set forth as No. 230,086, July 13, 1880; the same being particularly described in the claims of said patent No. 5 and 6." If the last averment stood alone, constituting the entire gravamen of the declaration, it might possibly be regarded as an attempt to allege infringement of the particular patent mentioned, though it falls far short of the usual and of some of the necessary averments employed for that purpose; but, taken in connection with the other allegations, which are more important, inasmuch as they cover 9,500 articles, while this includes only 2,000, it cannot fairly be treated as intended to proceed on a basis different from and inconsistent with the theory of the other and more substantial averments. There is no allegation of damages on the theory of infringement, and no basis furnished for estimating damages, except the stipulated license fees, which it is alleged the defendant "has never paid and has continually refused to pay." The plaintiff had no right in the same suit; though in the form of trespass on the

case, to seek a recovery of damages for breach of contract and for infringement of patent rights. The gravamen of this declaration is beyond question in the allegations of breach of contract, and, if good at all, it is good only for that purpose. If its defects are to be considered as cured by the verdict, it must be in the direction of its main design, and not in the direction of a minor averment, which, if amplified as proposed, would introduce an inconsistent cause of action.

The judgment below is reversed, and the cause remanded, with direction to dismiss the action, unless, on such terms in respect to costs as the court shall determine, leave shall be given for a further amendment of the declaration.