FLAGLER v. KIDD et al.

(Circuit Court of Appeals, Second Circuit. January 13, 1897.)

1. DISTILLED SPIRITS—REIMPORTATION—TAX.
    Distilled spirits withdrawn from bond under Rev. St. § 3330, which authorizes withdrawals for export without payment of the internal revenue tax, and forbids the relanding of the goods in the United States, cannot be reimported on payment of the original tax, pursuant to section 2500. 54 Fed. 367, reversed.
2. REVIEW ON ERROR—BILL OF EXCEPTIONS—FINDINGS OF FACT.
    Where there is no bill of exceptions in a case tried by the court, only the sufficiency of the facts found to support the judgment can be considered on error.
3. SAME—GENERAL ASSIGNMENTS—WHEN CONSIDERED.
    The rule that assignments pointing out no particular error will not be reviewed may be disregarded in case of plain error where the merits have been fully considered below, and discussed in the brief of one of the parties.

In Error to the Circuit Court of the United States for the Northern District of New York.

W. A. Poucher, U. S. Atty., for plaintiff in error.
Hale, Bulkeley & Tennant, for defendants in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. This is a writ of error to the circuit court for the Northern district of New York by the defendant in that court to review a judgment for the plaintiffs. The action was brought against the defendant, as collector of customs of the port of Suspension Bridge, to recover damages for the seizure and detention by him of 65 puncheons of spirits, the property of the plaintiffs. The action was tried before the court without a jury, a trial

by jury having been waived by the written stipulation of the parties; and in ordering a judgment for the plaintiffs the judge made and filed special findings of fact. There is no bill of exceptions, consequently the review can only extend to the consideration of the sufficiency of the findings of fact to support the judgment. Insurance Co. v. Boon, 95 U. S. 117. The assignments of error are defective, because they merely state that the judgment should have been for the defendant instead of the plaintiffs, and that neither the complaint nor the findings state any good cause of action. They fail to point out any "particular error asserted and intended to be urged," as is required by the rule. As was said by the court of appeals for the Seventh circuit (Grape Creek Coal Co. v. Farmers' Loan & Trust Co., 12 C. C. A. 350, 63 Fed. 891), "an assignment of errors cannot be good if it is necessary to look beyond its terms to the brief for a specific statement of the question to be presented." See, also, Oswego Tp. v. Travelers' Ins. Co., 17 C. C. A. 77, 70 Fed. 225; Doe v. Mining Co., 17 C. C. A. 190, 70 Fed. 455. We are very reluctant, in a case of respectable importance, to deny a review upon the merits of the controversy by a rigid adherence to the rule. As the merits were fully presented in the court below, and considered in its opinion (54 Fed. 367), and are fully discussed upon the brief of the defendant in error, and as the enforcement of the rule is discretionary with the court, and in case of plain error will be relaxed, we have concluded to disregard the objection.

It appears by the findings of fact that in July, 1884, the plaintiffs withdrew the spirits from a bonded warehouse at Des Moines, Iowa, for export to Canada, without paying the internal revenue tax thereon, and complied with all the requirements prescribed by the statutes and regulations in that behalf, intending to send them to New York City via Windsor, Canada, and pay the tax at New York City. When the spirits arrived at Windsor, they were taken out of the cars in which they had been shipped, and placed in a warehouse under the charge of Canadian customs officers. They remained there from July 12 to August 16, 1884, and were then shipped by the plaintiffs, in cars under the seal of the consul of the United States at Windsor, invoiced to the collector of the port at New York. When they arrived at Suspension Bridge, which was August 18, 1884, they were seized and detained by the defendant, acting under instructions from the secretary of the treasury, upon the ground that they had been improperly withdrawn from the warehouse at Des Moines, and there had been no exportation of them. On October 28th they were released by the defendant, upon the giving of a bond by the plaintiffs for exportation, and payment of certain charges for storage, etc. The court found that the plaintiffs were at all times ready and willing to pay the internal revenue tax upon the spirits, and that in consequence of the seizure and detention they sustained damages in the sum of $2,526.97. Upon these facts the court decided as matters of law that the seizure and detention of the spirits were wrongful and unlawful, and that the plaintiffs were entitled to recover their damages.

It appears by the opinion of the judge of the circuit court that judgment was awarded to the plaintiffs upon the legal theory that the spirits had been withdrawn from the warehouse for exportation, and the plaintiffs were entitled to reimport them upon paying a duty equal to the original revenue tax under the provision of the act of congress of July 28, 1866, entitled "An act to protect the revenue and for other purposes," and reproduced in the Revised Statutes as section 2500, and which reads as follows:

"Upon the reimportation of articles once exported of the growth, product or manufacture of the United States, upon which no internal revenue tax has been assessed or paid, or upon which such tax has been paid and refunded by allowance or drawback, there shall be levied, collected and paid a duty equal to the tax imposed by the internal revenue laws upon such articles."

The provision for withdrawing distilled spirits from warehouse is section 3330 of the Revised Statutes, and reads as follows:

"Distilled spirits may be withdrawn from distillery bonded warehouses, at the instance of the owner of the spirits, for exportation in the original casks, in quantities of not less than one thousand gallons, without the payment of tax under such regulations, and after making such entries and executing and filing with the collector of the district from which the removal is to be made such bonds and bills of lading, and giving such other additional security as may be prescribed by the commissioner of internal revenue, with the approval of the secretary of the treasury; provided, that bonds given under this section shall be canceled under such regulations as the secretary of the treasury shall prescribe; and provided further, that the bonds required to be given for the exportation of distilled spirits shall be canceled upon the presentation of satisfactory proof and certificates that said distilled spirits have been landed at the port of destination named in the bill of lading, or upon satisfactory proof that after shipment the same were lost at sea without fault or neglect of the owner or shipper thereof. * * * Every person who intentionally relands within the jurisdiction of the United States any distilled spirits which have been shipped for exportation under the provisions of this act * * * shall be fined * * * and imprisoned * * *; and all distilled spirits so relanded * * * shall be forfeited to the United States."

The question in the case is whether these spirits were withdrawn for exportation within the meaning of section 3330. If they were not, it is immaterial that they may have been reimported. It is quite inadmissible to construe section 2500 as authorizing the reimportation of spirits or any other articles upon which an internal revenue has not been paid by reason of a fraudulent or illegal evasion. It cannot be construed as intended to facilitate a fraud upon the revenue, which the act of which it is a part was enacted to protect. If the spirits were not withdrawn for exportation, they were lawfully seized by the defendant, because they were forfeited to the United States.

The statutes of congress, in force in 1884, are carefully devised to prevent the evasion of the taxes upon distilled spirits. The manufacture is at all times subject to the inspection of the officers of internal revenue. The spirits must be drawn off into receiving cisterns at stated intervals, and on the third day after be drawn into casks and removed directly to a bonded warehouse in charge of a government storekeeper. There they are to be stored until withdrawn. The tax must be paid within three years after the date of entry if they are not withdrawn, and, if they are withdrawn, must

be paid before their removal. Their removal from the warehouse otherwise than in compliance with law is made a criminal offense, and forfeits them to the United States. They can only be withdrawn without payment of tax when withdrawn for exportation pursuant to the terms of section 3330.

The findings of fact do not disclose whether or not the plaintiffs intended to unload the spirits at Windsor, and leave it wholly to inference whether they were unladen and stored there voluntarily, or because of the interposition of the Canadian customs officials. But as the findings state that the plaintiffs intended to remove them to New York, and pay the tax there, and as the only tax they could pay there was the duty which could be levied by the collector of that port under section 2500, it may be fairly inferred that the plaintiffs intended to have them unladen at Windsor, and consigned thence to the collector. In the view which we have reached, however, the fact is not material.

Ordinarily, goods are exported when they are carried out of the country for the purpose of being transferred to a foreign situs. Goods en route from one place to another in the United States are not exported merely because, while in transit, in cars or vessels, they may be temporarily outside the boundaries, or within the boundaries of a foreign country. Conversely, goods are imported when they are brought within the country with intent to land them here. The intent characterizes the act, and determines its legal complexion. U. S. v. Vowell, 5 Cranch, 368; The Mary, 1 Gall. 206, Fed. Cas. No. 9,183; The Boston, 1 Gall. 239, Fed. Cas. No. 1,670. In the absence of language in the statute indicating a contrary intention, it would be assumed that in section 3330 congress used the term "exportation" in the sense thus attributed to it, and consequently it might well be urged that the section should be interpreted as authorizing a withdrawal of spirits without payment of tax when it was the purpose of the owner to transfer them to a foreign country, and give them a temporary situs there, notwithstanding he may all the time have intended to subsequently remove them back again to this country, and reimport them upon the payment of a duty equal to the original revenue tax. But the statute itself denounces such an interpretation by making it criminal to "intentionally reland" within the jurisdiction of the United States distilled spirits which have been shipped for exportation, and declaring them forfeited to the United States. Articles can be relanded without having been exported, but they cannot be reimported without being relanded; and the term includes both the cases. The language, in effect, forbids the reimportation of spirits upon which the tax has not been paid when they have been withdrawn from warehouse, and does not rationally permit a less comprehensive import to be given to it. If the spirits have been shipped for exportation, it matters not whether they have been actually exported or not. If they are intentionally relanded, the penalty is incurred. Unless this language is ignored, the statute cannot mean to permit the withdrawal of spirits for an exportation which is to be followed

by a reimportation. The provision may be designed to reach a case where spirits might be warehoused, and before the expiration of the three years from entry within which the tax must be paid be withdrawn for exportation, and then reimported, thus obtaining an indefinite extension of the time of paying the tax. This part of the section is one of the stringent provisions calculated to enforce a strict compliance with all the requirements of the law taxing distilled spirits. We are unable to doubt that the spirits in controversy were properly seized by the defendant, and that the court below should have ordered judgment for the defendant. The judgment is reversed, with costs.