(C. D. 1453)

AVAKIAN BROS., INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided July 25, 1952)

*John D. Rode* (*Ellsworth F. Qualey* of counsel) for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

EKWALL, Judge: This protest involves an importation of 58 bales of Iranian rugs which were shipped overland from Iran to Iraq on March 23, 1949. They were laden on the S. S. *Steel Artisan* at Basrah, Iraq, and sailed from that port on June 5, 1949. En route to the port of New York in the United States, this vessel stopped at the port of Khoramshahr, Iran, and sailed therefrom on June 8, 1949. The collector of customs at the port of New York in liquidating the entry took as the date of exportation for currency conversion purposes under section 522 (c) of the Tariff Act of 1930 the date of sailing from Khoramshahr, Iran, June 8, 1949. The importer claims in its protest as follows:

Notice of dissatisfaction is hereby given with, and protest is hereby made against, your ascertainment and liquidation of duties, and your decision assessing duty under the Tariff Act of 1930, or the amendments thereof on merchandise invoiced or entered in Rials.

It is claimed that you have improperly and incorrectly converted the currency of invoice or entry into United States money. You should have converted said currency into United States money at the appropriate buying rate prevailing at the time of exportation. See Sec. 522. In any event it is claimed that you have not converted said currency into U. S. money in accordance with Sec. 522.

At the trial and in its brief plaintiff claims that the date of exportation for currency conversion is March 23, 1949, the date the merchandise crossed the border from Iran to Iraq. Trial was commenced at New York, N. Y., on April 18, 1951, at which time certain stipulations were entered into, the pertinent portions of which are set out from the record as follows:

MRS. BENNETT: If your Honor please, the Government offers to stipulate that the merchandise herein consists of 58 bales, marked ABRS 1234/1292, containing rugs from Iran, imported into the United States at the Port of New York on the S. S. "Steel Artisan" and covered by Customs entry 700187, dated July 1, 1949. Is it so agreed?

Mr. Qualey: Yes, so agreed.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Mrs. Bennett: That certain authentic maps, showing the geographic location of points in Iran and Iraq pertinent hereto, may be received in evidence as Collective Exhibit No. 2.

Mr. Qualey: So agreed.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Mrs. Bennett: That the ship's manifest for the S. S. "Steel Artisan" covering the voyage of importation herein, shows that the said voyage commenced at Bahrein, Bahrein Islands, on May 19, 1949, and included the following ports from which said vessel sailed in the order and on the dates stated, viz: Ras El Mishab, Arabia, May 22; Ras Tanura, Saudi Arabia, June 1; Basra, Iraq, June 5; Khorramshahr, Iran, June 8; Djibouti, Somaliland, June 14, via Suez, Egypt June 17, and Port Said, Egypt, June 18; thence to New York, where it arrived July 1, 1949.

Mr. Qualey: So agreed.

Mrs. Bennett: That the instant 58 bales of rugs were loaded on the said vessel at Basra, Iraq, from which port the vessel sailed as aforesaid on June 5, 1949, and proceeded to Khorramshahr, Iran, from which port the vessel sailed as aforesaid on June 8, 1949.

Mr. Qualey: So agreed.

Mrs. Bennett: That the bill of lading, issued by the Isthmian Steamship Lines at Basra, Iraq, on June 4, 1949, covering the instant importation, may be received in evidence as Exhibit No. 3, a joint exhibit.

Mr. Qualey: So agreed.

\*　　\*　　\*　　\*　　\*　　\*　　\*

Mrs. Bennett: That for the quarters including March 23 and June 8, 1949, no value for the Iranian rial was proclaimed by the Secretary of the Treasury, as provided in Section 522 (a), Tariff Act of 1930, citing for the court's attention T. D.'s 52126 and 52182.

Mr. Qualey: So agreed.

Mrs. Bennett: That, as provided in Section 522 (c) of the Tariff Act, the Federal Reserve Bank certified buying rates for the Iranian rial as follows: For March 23, 1949, $0.020408; and for June 8, 1949, $0.021505.

Mr. Qualey: So agreed.

Mrs. Bennett: That in liquidating the entry herein, the collector converted the currency of the invoice and entry (Iranian Rials) at the aforesaid certified rate of $0.021505 applicable on June 8, 1949, the date the importing vessel sailed from Khorramshahr, Iran.

Mr. Qualey: So agreed.

Mrs. Bennett: That all papers forwarded with the protest, including the collector's letter of transmittal, may be received in evidence.

Mr. Qualey: So agreed.

The case was thereafter adjourned for future hearing, and on October 17, 1951, a further hearing was held at New York, N. Y., at which time Mr. Alexander K. Avakian, of Crestwood, N. Y., was called as a witness on behalf of the plaintiff and gave considerable testimony, practically all of which was directed to the question of

whether the plaintiff at the time of shipping the merchandise overland from Iran to Iraq on March 23, 1949, intended this merchandise to be shipped to the United States. The Government in its brief on page 12 conceded as follows on that question:

\* \* \* In the case at bar, the parties concededly intended to export.

Inasmuch as there seems to be no dispute on this question of intent, we can see no good purpose in reviewing the testimony of Mr. Avakian. We are convinced from the record, as conceded, that at the time the merchandise left Iran and entered Iraq, the plaintiff intended that this merchandise should be subsequently shipped to the United States.

The only question presented in this litigation is whether the proper date of exportation for currency conversion purposes under section 522 (c) of the Tariff Act of 1930 is March 23, 1949, or June 8, 1949. The pertinent portions of section 522, under the heading "Conversion of Currency," are as follows:

(a) VALUE OF FOREIGN COIN PROCLAIMED BY SECRETARY OF TREASURY.— Section 25 of the Act of August 27, 1894, entitled "An Act to reduce taxation, to provide revenue for the Government, and for other purposes," as amended, is reenacted without change as follows:

"SEC. 25. That the value of foreign coin as expressed in the money of account of the United States shall be that of the pure metal of such coin of standard value; and the values of the standard coins in circulation of the various nations of the world shall be estimated quarterly by the Director of the Mint and be proclaimed by the Secretary of the Treasury quarterly on the 1st day of January, April, July, and October in each year."

(b) PROCLAIMED VALUE BASIS OF CONVERSION.—For the purpose of the assessment and collection of duties upon merchandise imported into the United States on or after the day of the enactment of this Act, wherever it is necessary to convert foreign currency into currency of the United States, such conversion, except as provided in subdivision (c), shall be made at the values proclaimed by the Secretary of the Treasury under the provisions of section 25 of such Act of August 27, 1894, as amended, for the quarter in which the merchandise was exported.

(c) MARKET RATE WHEN NO PROCLAMATION.—If no such value has been proclaimed, or if the value so proclaimed varies by 5 per centum or more from a value measured by the buying rate in the New York market at noon on the day of exportation, conversion shall be made at a value measured by such buying rate. If the date of exportation falls upon a Sunday or holiday, then the buying rate at noon on the last preceding business day shall be used. \* \* \*

We quote from the Customs Regulations of 1943, in effect at the time of this transaction, as follows:

Sec. 16.4 Conversion of currency.—(a) \* \* \*

(b) The date of exportation for currency conversion shall be fixed in accordance with section 14.3 of these regulations.

Sec. 14.3 Appraisement of merchandise; determination of value.—(a) \* \* \*

(b)   The time of exportation referred to in section 402 of the tariff act is the date on which the merchandise actually leaves the country of exportation for the United States.[5]  *   *   *

Plaintiff in its brief contends that the physical severance of the merchandise from Iran, coupled with the intention of not returning it to Iran, is sufficient to constitute an exportation from Iran on March 23, 1949, and, in the absence of a return of the goods to Iran, it must be conceded that there was an exportation on that date, quoting as authority *Swan & Finch Company* v. *United States*, 190 U. S. 143; *United States* v. *The National Sugar Refining Co.*, decided November 7, 1951, 39 C. C. P. A. (Customs) 96, C. A. D. 470.

We quote from plaintiff's brief further as follows:

It is apparent that in the absence of a return of the goods to Iran it must be conceded that there was an exportation from Iran on March 23, 1949 and that such date is the proper date of exportation for currency conversion purposes.

Plaintiff's brief further sets forth that the evidence shows that the merchandise was placed on board the S. S. *Steel Artisan* in Basrah, Iraq, for carriage to the United States, and that the vessel on its voyage of importation stopped at the port of Khoramshahr in Iran without this merchandise being discharged, stating that it is quite apparent that unless there was an importation of the merchandise in question into Iran when the vessel stopped at Khoramshahr, there could be no exportation of the said merchandise when the vessel sailed from that port on June 8, 1949; that the act of importation has been defined on many occasions as the bringing of goods into a country from the outside with intention to unlade, quoting *Cunard* v. *Mellon*, 262 U. S. 100, 121; *Flagler* v. *Kidd et al.*, 78 Fed. 341; *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 406, T. D. 42052; that applying this yardstick to the facts, it is evident that while the goods were physically within the country of Iran while on board the S. S. *Steel Artisan*, there was absolutely no intention of unlading them or of having them enter into the commerce of Iran; that they were simply in transit to the United States, quoting as authority *Flagler* v. *Kidd et al.*, *supra*, at page 344:

---

[5] If the merchandise is shipped directly by water from the country of export, the date of the sailing of the vessel is the date of exportation. Since the act of exportation is not complete until the merchandise finally leaves the jurisdiction of the exporting country, if a vessel with merchandise on board sails from two or more ports, or more than once from the same port, of the exporting country, whether or not stopping on the intervening voyage at a port of another jurisdiction, or if the merchandise is transshipped in another jurisdiction and subsequently re-enters the jurisdiction of the exporting country on another vessel, or if the merchandise is transshipped to another vessel in the same jurisdiction, the date the vessel on which the merchandise finally leaves the exporting country sails from the last port thereof is the date of exportation. When the merchandise is shipped from an interior country through the ports of another country or from a country contiguous to the United States, the date of exportation is the date on which the merchandise crosses the border of the country of exportation and passes beyond the control of the government of such country. These provisions apply also to merchandise shipped directly by air.

Ordinarily, goods are exported when they are carried out of the country for the purpose of being transferred to a foreign situs. Goods en route from one place to another in the United States are not exported merely because, while in transit, in cars or vessels, they may be temporarily outside the boundaries, or within the boundaries of a foreign country. Conversely, goods are imported when they are brought within the country with intent to land them here. The intent characterizes the act, and determines its legal complexion.

Plaintiff's said brief, in summarizing this question, stated as follows:

In the instant case when the merchandise crossed the land border from Iran into Iraq it was intended for the United States and that intention was never changed. Consequently there was no importation into Iran at Khorramshar and no exportation from Iran when the vessel left that port on June 8, 1949.

The question of the time or date of exportation has been before the court on numerous occasions, and it has been decided from the earliest cases to the present time that it has reference to the date of the last sailing of the importing vessel from the country of exportation. One of the earlier cases seems to be that of *Forman* v. *Peaslee*, 9 Fed. Cas. 452, decided in 1857. There, the goods had been shipped from Wales in Great Britain, to Liverpool, and then reshipped to the United States. It was held that until the vessel actually cleared from Liverpool, there was no complete act of exportation. The reason underlying this holding of the Federal court was that until the vessel having the goods on board was finally cleared from the country, there was no complete act of exportation, for until that time the goods were held to be under the control of that country and were subject to search and seizure. In that case, the merchandise was transshipped at Liverpool. A reading of the case discloses that the court stated it did not consider a transportation coastwise from one port of a country to another an exportation from that country. Apparently, it made no difference whether such transportation coastwise was made on a separate vessel or on the same vessel in which the goods were intended to be shipped to the United States. See also *Sampson* v. *Peaslee*, 61 U. S. (20 How.) 571; *Irvine* v. *Redfield*, 64 U. S. (23 How.) 170; and *Roessler & Hasslacher Chemical Co.* v. *United States*, 1 Ct. Cust. Appls. 290, T. D. 31353. The case of *B. H. Dyas Corporation et al.* v. *United States*, 56 Treas. Dec. 268, T. D. 43600, seems directly in point. There, the importing vessel sailed from Havre on August 6, 1924, from Antwerp, Belgium, August 17, and from Bordeaux, August 23. The merchandise covered by the case there before the court was laden at Havre. It was held that the date of exportation was August 23, when the vessel left the last port of France, i. e., Bordeaux. This was based upon the reasoning that in making the stop at Bordeaux, the vessel returned to the jurisdiction of France and was subject to search and seizure by the Government. The *Dyas* case involved the value of the currency of the invoices and the court, speaking through Waite, J.,

used the following language, which we think is applicable in the case before us:

Reasoning by analogy we think there is no doubt but that, for the purpose of ascertaining the market value of this merchandise, the date of sailing from Bordeaux would be taken as the time of exportation. In our judgment there is no reason for adopting a different rule for the purpose of conversion of the currency of the invoice, where the statute expressly prescribes the day of exportation for the purpose of valuing the currency. It is axiomatic that where the same term is used in different parts of a statute it should have in all cases the same meaning. *Shallus* v. *United States*, 1 Ct. Cust. Appls. 556, T. D. 31552.

See also *W. J. Byrnes & Co. of N. Y., Inc.* v. *United States*, 58 Treas. Dec. 893, Abstract 12666, and *F. F. G. Harper Co.* v. *United States*, 58 Treas. Dec. 980, Abstract 13158. The latter case is somewhat analogous to the case under discussion. In the *Harper* case, the merchandise in question consisted of oriental rugs, imported from China. The rugs were laden on the importing vessel at Taku Bar, China, from which port said vessel sailed, bound for Dairen, on June 30, 1926. It arrived at Dairen on July 1, 1926. On July 2, 1926, it sailed for Chefoo, China, where it arrived and sailed for Japan—all on the same day. Plaintiff claimed that the date of exportation was July 2, 1926. We quote the following from the opinion:

In view of these agreed facts plaintiff claims that the date of exportation was July 2, 1926, when the importing vessel sailed from Chefoo, China, rather than June 30, 1926, the date on which it sailed from Taku Bar, which latter date was used in liquidation of the entry. Both sides agree that the rate proclaimed by the Secretary of the Treasury rather than the exchange rate is applicable. The collector adopted the proclaimed rate for the quarter commencing April 1, 1926, $0.519, whereas plaintiff claims he should have used $0.5058, the rate proclaimed for the quarter commencing July 1, 1926.

Counsel for the plaintiff argues in effect that the first three clearances were all made from ports of China; that Dairen is a port of China, although part of the area leased by China to Russia and later to Japan. As we view the issue it is immaterial whether Dairen be considered under the sovereignty of China or Japan. The importing vessel left Taku Bar, China, where the rugs were laden, and proceeded to Dairen. From that port it sailed for Chefoo, China, from thence to Japan, and from Japan to the United States. This court has held that the date of the last sailing from the country of exportation is the date of exportation for purposes of conversion of currency. (See Dyas Corp. et al. *v.* United States, T. D. 43600.) In the instant case China was the country of exportation and the last port of that country at which the vessel touched was Chefoo, from whence it sailed on July 2, 1926. The collector should have used as the basis for conversion the proclaimed rate for the quarter commencing July 1, 1926, viz, $0.5058, as claimed in the protest.

Counsel for the plaintiff has laid stress on the citation from the case of *United States* v. *The National Sugar Refining Co., supra,* as follows:

So far as we have been able to .determine both the courts and the customs officials have uniformly defined the legal notion of exportation as a severance of

goods from the mass of things belonging to this country with an intention of uniting them with the mass of things belonging to some foreign country.

This is undoubtedly a correct general definition of the term "exportation," but in reading this decision we do not find that it has changed the rule set forth in the various cases cited, *supra*, that the act of exportation is complete only when the merchandise is cleared from the last port of call in the country of exportation.

The record and plaintiff's brief have referred to customs entry 700187, dated July 1, 1949, which is the consumption entry filed herein. This document does not seem to have been specifically marked in evidence. Perusal thereof reveals that it was signed by a Mesrop Avakian, president of Avakian Bros., Inc. It sets forth the port of lading as Basrah, the date of sailing as June 5, 1949, and the port of unlading as New York. It gives the importer of record as Avakian Bros., Inc.; that the goods were imported on the S. S. *Steel Artisan* via Khoramshahr as last foreign port; and gives the further information that merchandise was *exported* from *Iran* on June 7, 1949. This would indicate that at the time this document was compiled, the president of plaintiff herein seemed to have recognized that the place of exportation was Khoramshahr on June 7, 1949 (which date undoubtedly was meant for June 8, 1949). We do not consider this as decisive of the question but feel that this should not escape mention. From a thorough study of the facts herein and the decisions pertaining to this question, we hold that the last date of sailing of the vessel containing the merchandise herein, namely, June 8, 1949, from Khoramshahr, Iran, was the date of *exportation*, and the action of the collector at the port of New York in converting the invoice currency under section 522 of the Tariff Act of 1930 at the rate of exchange applicable on June 8, 1949, is correct. The protest herein will be overruled and judgment will be rendered accordingly.